101 F.3d 687
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
UNITED STATES of America, Appellee,
v.
David BATASHVILI; David Bachakashvili; Jonathan Sadov;
Shura Milman and Svetlana Shkolnik, Defendants,
Yakov BACHAKASHVILI; Joseph Chicareli; and Jorge
Pemberton, Defendants-Appellants.
 Nos. 95-1581(L), 95-1582, 95-1595.
 United States Court of Appeals, Second Circuit.
 June 26, 1996.
 
 1
 Ephraim Savitt, New York, NY, Gail E. Laser, New York, NY, Barry E. Schulman, Brooklyn, NY, for appellants.
 
 
 2
 Peter A. Norling, Asst. U.S. Atty., Brooklyn, NY, for appellee.
 
 
 3
 Before NEWMAN, Chief Judge, JACOBS, Circuit Judge, and CHATIGNY,* District Judge.
 
 
 4
 This cause came on to be heard on the transcript of record from the United States District Court for the Eastern District of New York and was argued by counsel.
 
 
 5
 ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgments of the District Court are hereby AFFIRMED.
 
 
 6
 Defendants-appellants Yakov Bachakashvili, Joseph Chicareli, and Jorge Pemberton appeal from judgments entered on October 11, 1995, in the District Court convicting them, following a jury trial, of various narcotics offenses and sentencing them to imprisonment. Bachakashvili was convicted of (1) conspiracy to import heroin (the "Count 1 Importation Conspiracy"), 21 U.S.C. § 963; (2) conspiracy to possess with intent to distribute heroin (the "Count 2 Distribution Conspiracy"), 21 U.S.C. § 846; (3) importation of heroin, 21 U.S.C. § 952(a); and (4) possession with intent to distribute heroin, 21 U.S.C. § 841(a)(1). Chicareli was convicted of (1) the Count 2 Distribution Conspiracy and (2) distribution of heroin. Pemberton was convicted of (1) the Count 2 Distribution Conspiracy; (2) a separate conspiracy to import heroin; and (3) importation of heroin. Appellants raise a variety of objections to their convictions and sentences.
 
 
 7
 1. Multiple or single conspiracy. Appellants' primary contention is that reversal of their convictions is required because, with respect to each of the first two counts of the indictment, the evidence established multiple conspiracies rather than a single conspiracy, and each appellant suffered substantial prejudice from the admission of evidence of the conspiracies in which he claims he did not participate. The determination of whether the evidence establishes single or multiple conspiracies is a fact question to be resolved by a properly instructed jury. United States v. Medina, 944 F.2d 60, 64 (2d Cir.1991), cert. denied, 503 U.S. 949 (1992). Moreover, "a single conspiracy is not transposed into a multiple one simply by lapse of time, change in membership, or a shifting emphasis in its locale of operations." United States v. Cambindo Valencia, 609 F.2d 603, 625 (2d Cir.1979), cert. denied, 446 U.S. 940 (1980). We are satisfied that the jury's finding of a single conspiracy is supported by the record.
 
 
 8
 The conspiracy obviously centered around Batashvili. The evidence also permitted the jury to find that Chicareli, Bachakashvili, and Pemberton were common participants through both the "courier" and "mail parcel" phases. In addition, despite variations in technique at different times, the conspiracy maintained a "consistent pattern of operation," based on the smuggling of heroin from Europe to the United States through certain airports. See United States v. Armedo-Sarmiento, 545 F.2d 785, 790 (2d Cir.1976), cert. denied, 430 U.S. 917 (1977). Although the conspiracy was not static, the evolutionary manner in which changes in the operation took place supports the jury's finding of a single conspiracy. For example, when Batashvili switched his supply source from Bangkok to Europe, he continued to use couriers as the means to transport the drugs, and when he switched from couriers to mail parcels, it was reasonably inferable that the European supply source remained the same. Accordingly, we decline to disturb the jury's finding of a single conspiracy.
 
 
 9
 2. Severance motion. Pemberton contends that since Lemberg's testimony was not credible, the evidence against him was insubstantial compared to the evidence against the other defendants, and therefore he was prejudiced by a joint trial. Pemberton's challenge to Lemberg's testimony is without merit. Credibility determinations are for the jury. The evidence amply established Pemberton's significant involvement in the courier phase, which was the focus of the trial. In addition, the District Court protected against the prejudicial effect of spillover testimony by giving limiting instructions that the jury was to consider each defendant's case separately. See United States v. Cervone, 907 F.2d 332, 341-42 (2d Cir.1990), cert. denied, 498 U.S. 1028 (1991).
 
 
 10
 3. Prosecutorial misconduct. Pemberton contends that he was denied a fair trial because in summation the prosecutor drew improper inferences about the contents of certain telephone calls. Pemberton's basic argument, that it is impermissible for a prosecutor to suggest to the jury any inference about the content of the calls, is incorrect. "In summation counsel are free to make arguments which may be reasonably inferred from the evidence presented." United States v. Roldan-Zapata, 916 F.2d 795, 807 (2d Cir.1990), cert. denied, 499 U.S. 940 (1991). In addition, during her summation the prosecutor repeatedly conceded that the toll records did not in themselves establish the identity of the parties to the calls or their contents, and the Court instructed the jury as to the appropriate evidentiary value of the calls. If the prosecutor went over the line at any point, these curative statements were sufficient to avoid any prejudice.
 
 
 11
 Pemberton also argues that the prosecutor improperly suggested that the defendants had to provide an exculpatory explanation for the number and timing of the calls. We agree with the District Court that this statement was not a comment on any defendant's failure to testify, but rather simply called on defense counsel to provide a defense theory to explain incriminating evidence. See, e.g., United States v. Bubar, 567 F.2d 192, 199-200 (2d Cir.), cert. denied, 434 U.S. 872 (1977). In any event, the Court cured any arguable harm from the prosecutor's isolated comments by instructing the jury that the defendants had no burden to offer any explanation for the telephone records. See, e.g., id. at 200.
 
 
 12
 4. New trial motion. Pemberton contends that the District Court erred in denying his motion for a new trial based on newly discovered evidence. To obtain a trial based on newly discovered evidence, defendant must show, among other things, that the evidence would probably lead to an acquittal. United States v. Underwood, 932 F.2d 1049, 1052 (2d Cir.), cert. denied, 502 U.S. 942 (1991). We are satisfied with the District Court's determination that Batashvili's post-conviction statements would not have discredited Lemberg's testimony implicating Pemberton, and therefore would not have resulted in an acquittal.
 
 
 13
 5. Sentencing challenges. First, Bachakashvili contends that he should not have been sentenced based on the amount of drugs contained in the three seized mail parcels, because the evidence failed to establish that he could reasonably foresee the amounts of heroin contained in the parcels. As the Government argues, in the circumstances of this case, the foreseeability standard is irrelevant. Because Bachakashvili himself undertook acts, and aided and abetted the acts of others, with respect to the importation and possession of the three parcels, he is liable for the entire amount of drugs contained in the parcels without regard to reasonable foreseeability. See U.S.S.G. 1B1.3(a)(1) A; see also id., § 1B1.3, comment. (n.2).
 
 
 14
 Second, Bachakashvili contests his obstruction enhancement, which was based on his perjurious testimony at trial. Bachakashvili gave implausible explanations for a variety of his activities, and his accounts differed from the Government agents in many respects. There is no reason to disturb the District Court's fact-finding decision.
 
 
 15
 We have thoroughly reviewed the various other contentions advanced by the three appellants, and find them to be without merit.
 
 
 
 *
 Of the United States District Court for the District of Connecticut, sitting by designation